```
                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


BLACK DIAMOND SPORTSWEAR, INC.,   :
         Plaintiff,               :
                                  :
         v.                       :     Docket No. 1:03-CV-278
                                  :
BLACK DIAMOND EQUIPMENT, LTD.,    :
         Defendant.               :
_____ :
```

### RULING ON PLAINTIFF'S MOTION TO CERTIFY
### PURSUANT TO FED. R. CIV. P. 54(B)
(Paper 114)

On September 29, 2005, the Court issued a Ruling granting summary judgment to defendant Black Diamond Equipment, Ltd. ("BDE") on all claims of plaintiff Black Diamond Sportswear, Inc. ("BDS"). (Paper 104.) The parties thereafter stipulated to the dismissal without prejudice of BDE's counterclaim (Paper 105, 107), and the Court entered judgment in favor of BDE (Paper 108). The plaintiff now moves to amend the Ruling to certify it as a final, appealable judgment, under Fed. R. Civ. P. 54(b). (Paper 114.) For the reasons set forth below, the plaintiff's motion is GRANTED.

### Background

The facts of the case, familiarity with which is assumed, are set forth here to the extent they are relevant to the present motion. This case arose from BDE's alleged infringement on BDS's

federally-registered BLACK DIAMOND trademark for skiwear.[1]  BDS brought suit in this Court in 2003 alleging trademark infringement, false designation of origin, and dilution under federal common law and the Lanham Act, and seeking to enjoin BDE from using or otherwise diluting the trademark and to order BDE to deliver up for destruction any infringing materials; BDS also sought punitive damages for willful misconduct.  Among other defenses, BDE asserted laches and acquiescence.  (Paper 64.)

On August 25, 2005, the Court issued a Ruling granting summary judgment in favor of BDE as to all claims by BDS.  (Paper 104.)  The Court held BDE was entitled to summary judgment because BDS's claims were barred by the doctrine of laches.  The Court also held BDS could not obtain an injunction despite laches because BDS failed to present any evidence of a likelihood of confusion.[2]

After the summary judgment Ruling, the only remaining claim before the Court was BDE's counterclaim, which asserted "a declaratory judgment is necessary because BDE has made

---

[1]   BDE owns the U.S. registration of the BLACK DIAMOND mark in several international classes for various technical mountaineering products.  (Paper 75 ¶ 25.)

[2]   Specifically, the Court concluded there was a "significant lack of evidence of confusion."  (Paper 104 at 14.)  As BDE explained in its motion for summary judgment, some consumers may have been confused about the existence of two companies called Black Diamond, but the confusion did not impact their buying decisions; for example, one consumer knew what products he was looking for -- climbing equipment by BDE -- but mistakenly called BDS.  (Paper 74 at 23.)

preparations which BDS has alleged constitute trademark infringement, despite the fact that BDS's delay in enforcing its mark and acquiescence to BDE's use of the BLACK DIAMOND trademark for over a decade have diluted BDS's mark to the point of unenforceability." (Paper 64 ¶ 18.) BDE's counterclaim also alleged "that a portion of BDS's sales under the 'Black Diamond' tradename is a result of BDS trading on the secondary identity and widespread recognition of BDE." (Paper 64 ¶ 15.) BDE therefore requested "[t]hat an order be entered that BDE has all rightful entitlement to use the aforementioned trademark with regard to BDS, or its successors." (Paper 64 at 9.)

Following the summary judgment Ruling, the Court ordered BDE to inform the Court whether it intended to pursue its counterclaim (Paper 105), and in response, the parties stipulated to the dismissal without prejudice of BDE's counterclaim (Paper 107). The next day, the Court entered judgment in BDE's favor. (Paper 108.)

BDS's timely appeal followed. On February 21, 2006, however, the Court of Appeals issued a mandate stating the parties had stipulated to the withdrawal of BDS's appeal; the appeal was premature because BDE's counterclaim was dismissed "without prejudice," leaving the claim unresolved and the Court of Appeals without jurisdiction. (Paper 113 (citing <u>Chappelle v. Beacon Commc'ns Corp.</u>, 84 F.3d 652 (2d Cir. 1996).) The mandate

further states "[t]his stipulation shall not preclude any appeal from a final judgment, i.e., adjudicating all the claims and the rights and liabilities of all the parties, or granting certification, F.R.C.P. 54(b)."  (Paper 113.)

BDS now moves to amend the summary judgment Ruling to certify it as a final, appealable judgment, pursuant to Rule 54(b).  (Paper 114.)  In support of the proposed certification, BDS argues (1) BDE's counterclaim was a "mirror image" of BDS's infringement claim and as such was finally resolved by the summary judgment Ruling; (2) BDE's counterclaim was compulsory and therefore, voluntary dismissal without prejudice is effectively dismissal with prejudice;[3] and (3) the practical effect of BDE's opposition to Rule 54(b) certification and failure to prosecute its claim expeditiously is to permanently deny BDS an appeal.  (Papers 114, 116.)

---

[3]  It is, of course, well-settled that "[i]f a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit."  See, e.g., Critical-Vac Filtration Corp. v. Minuteman Int'l Inc., 233 F.3d 697 (2d Cir. 2000) (citing Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974)).  The purpose of the rule is to promote resolution of all claims arising from the same occurrence or transaction.  See Fed. R. Civ. P. 13(a). BDS cites one case which appears to go further, suggesting a party must not only plead its compulsory counterclaim but also pursue it in the original action.  (Paper 116 at 2 (citing SMCC, Inc. v. Steffen, 102 F.3d 704, 711-12 (4th Cir. 1996) (affirming district court's conclusion that its dismissal of a compulsory counterclaim had the effect of dismissal with prejudice)).  Because the Court finds the SMCC case to be distinguished from this case, however -- where the Court has not previously discussed the compulsory nature of the counterclaim, and the parties stipulated to the dismissal -- and finds no Second Circuit case on point, the Court is not convinced that BDE is barred from bringing its counterclaim in a later action.

In opposition, BDE argues (1) BDS waived its right to appeal until BDE's counterclaim is resolved, (2) the relief sought by BDE's counterclaim is broader than the laches defense on which the Court granted summary judgment, or alternately, that BDE's counterclaim is the "mirror image" of BDS's claim and therefore inappropriate for 54(b) certification, (3) BDS's motion is untimely, and (4) BDS cannot show any grounds for amendment under Fed. R. Civ. P. 60.  (Papers 115, 117.)  BDE also acknowledges that "BDS may never be able to appeal this Court's dismissal of its claims since it is within BDE's discretion to press its counterclaim."  (Paper 115 at 5.)

## Discussion

As a preliminary matter, BDE argues the Court has no grounds under Rule 60 to amend the judgment to include Rule 54(b) certification.  The Second Circuit's mandate, however, reserved for the parties the right to request and appeal from Rule 54(b) certification.  (Paper 113.)  The Court views the mandate as permission to consider, and if prudent, grant, Rule 54(b) certification.  See Pause Tech. LLC v. TiVo Inc., 401 F.3d 1290 (Fed. Cir. 2005) (granting leave to seek remedial action under Rule 54(b) in the district court, where district court had previously entered judgment) (citing Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 449-50 (1956)); Heimann

v. Snead, 133 F.3d 767 (10th Cir. 1998).  Now to the Rule 54(b) determination.

When the district court has resolved at least one but fewer than all of the claims in an action, Rule 54(b) permits the court to direct the entry of a final judgment "only upon an express determination that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  "Respect for the 'historic federal policy against piecemeal appeals' requires that such a certification not be granted routinely."  L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 85 (2d Cir. 1998) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438 (1956)).  The power "should be used only in the infrequent harsh case" where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal."  Id. at 86 (quoting Brunswick Corp. v. Sheridan, 582 F.2d 175, 183 (2d Cir. 1978)).

Specifically, district courts considering Rule 54(b) motions must determine whether three prerequisites for an immediately appealable partial judgment exist: (1) multiple claims, at least one of which has been finally resolved; (2) no just cause for delay of appeal of the adjudicated claim; and (3) entry of judgment.  See L.B. Foster, 138 F.3d at 86-87 (quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10 (1980)) (internal quotations omitted).  Multiple claims exist where each claim is factually independent or could be enforced separately,

6

or where there is more than one type of relief requested or potential recovery.  See Advanced Magnetics v. Bayfront Partners, 106 F.3d 11, 16, n.21 (2d Cir. 1997); see also Ginett v. Computer Task Group, 962 F.2d 1085, 1096 (2d Cir. 1992) ("Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification.").

As to whether there is "no just reason" for delaying appeal, this determination is made on a case-by-case basis.  See Sears, Roebuck, 351 U.S. 427.  Factors include the relationship between the adjudicated and unadjudicated claims; the possibility that the need for appellate review might be mooted by future developments in the district court; the possibility that the district court might be obligated to consider the same issue on a later occasion; and other factors such as delay, frivolity of competing claims, and expense.  See Akers v. Alvey, 338 F.3d 491, 495 (6th Cir. 2003).  This Circuit has held that, "[i]f the question of whether certification should have been granted is a close one, we will normally accept it if that course will make possible a more expeditious and just result for all parties." L.B. Foster, 138 F.3d at 87 (internal quotations and citations omitted).

Applying these principles to the present motion, the Court exercises its discretion to dispatch the Ruling on BDS's claims

for immediate appeal.  As to the existence of multiple claims, because BDE's counterclaim was not resolved on summary judgment, there are multiple claims at issue in this case, only some of which have been adjudicated.

BDE asserts its counterclaim is "significantly broader" than the laches defense (Paper 115 at 1-2) upon which the Court granted summary judgment.  BDE counterclaims that BDS's trademark has become "unenforceable" due to dilution, and "that a portion of BDS's sales under the 'Black Diamond' tradename is a result of BDS trading on the secondary identity and widespread recognition of BDE."  (Paper 64 ¶ 15, 18.)  On these claims, BDE seeks a declaratory judgment that it has "all rightful entitlement" to use of BDS's trademark for skiwear.  (Paper 64 at 9.)

BDE now compares its counterclaim to that in Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209 (2d Cir. 2003) (holding senior user of Patsy's mark likely infringed on junior user's PATSY'S PR SINCE 1944 mark, used by restaurant market's junior user who was first to market sauce, and establish itself, in the retail market.  (Paper 115 at 6-7.)  To the extent BDE claims BDS has infringed on BDE's trademark, the Court views the counterclaim to be "separable from and independent of" the summary judgment ruling.  Such a claim would not require the district or appeals court to re-visit the issue of laches; rather, it would require detailed consideration of the likelihood of confusion.  See Patsy's Brand, 317 F.3d at 217-19 (discussing

8

all Polaroid factors, including reverse confusion). Moreover, this Court's disposition of such a claim would not render the appeals court's opinion on the present judgment advisory or moot. See Ginett, 962 F.2d at 1095.

Even if this is a borderline case for certification as to the separability of the claims, the judgment should be heard on immediate appeal because the practical consequence of events in this case is likely the permanent denial of BDS's appeal. Therefore, the equities favor certification for immediate appeal.

After granting summary judgment to BDE, the Court ordered BDE to inform the Court whether it would pursue its counterclaim (Paper 105), prompting the parties to stipulate to the dismissal of BDE's counterclaim without prejudice (Paper 107). BDS claims now that the "'without prejudice' part appeared to be immaterial given that BDE's counterclaim was the 'mirror image' of BDS's infringement claim" and was resolved by the disposition of BDS's claims. (Paper 114 at 1-2.) In view of the Court's order and the parties' response to it, the Court concluded it had resolved the entire case, entered judgment for BDE, and issued the notice-of-appeal information. (Paper 108.) BDE now acknowledges that BDS "may never be able to appeal" since the power to press the counterclaim rests entirely with BDE (Paper 115 at 5), and "there is no requirement that [BDE] pursue its claims 'expeditiously'" (Paper 117 at 5). The unintentional consequence of these events is the permanent denial of BDS's appeal.

It is well-settled in the circuit courts that parties may not craft appellate jurisdiction by voluntarily dismissing claims without prejudice.  See, e.g., State Treasurer v. Barry, 168 F.3d 8, 21 (11th Cir. 1999) (holding that appellate jurisdiction over a non-final partial summary judgment order could not be created by parties' agreeing to dismiss without prejudice the remaining claim); accord Rabbi Jacob Joseph Sch. v. Province of Mendoza, 425 F.3d 207 (2d Cir. 2005) (citing Chappelle, 84 F.3d 652) (setting out the rule as jurisdictional, but also outlining exceptions)).  The Barry court concluded that such manipulation is a "strategic choice."  Id. at 16; but see id. at 19-21 (Cox, J., specially concurring) (explaining the rule is bad policy because it may permanently deny appeal, may inhibit finality where the court lacks authority to dismiss the action with prejudice, and is an overbroad deterrent to jurisdictional manipulation).

Here, however, BDS did not make a strategic choice by stipulating to dismissal of BDE's counterclaim in order to create appellate jurisdiction; rather, the Court ordered BDE to inform the Court whether it would pursue its counterclaim, and the parties stipulated to dismissal without prejudice, suggesting to the Court that it should enter judgment as final and appealable.  Cf. DIRECTV Inc. v. Budden, 420 F.3d 521, 526 (5th Cir. 2005) (while "the label 'Final Judgment' would not necessarily make the judgment final when other live claims were present, such labeling

10

does illuminate the district court's intent and, combined with the other indications, bolsters our conclusion that the district court treated the claims it disposed of as the only live claims.").

The events in this case result in indefinite delay, if not permanent denial, for BDS's appeal.  See Chappelle, 84 F.3d at 654, n.3 ("It is appropriate to take a practical view of the dismissal.").  Because the unjust result denies BDS the right to appeal pursuant to 28 U.S.C. § 1291, the Court grants BDS's motion for Rule 54(b) certification.  See Fed. R. Civ. P. 1 (the Rules shall be construed "to secure the just, speedy, and inexpensive determination of every action.").

## Conclusion

For the reasons set forth above, the plaintiff's motion to certify the Court's summary judgment Ruling as a final, appealable judgment, pursuant to Fed. R. Civ. P. 54(b) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 12th day of July, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge